FILED

2006 Jan-09  PM 01:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DENNIS TAYLOR, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] CV-04-CO-3463-W |
| | ] |
| CITY OF TUSCALOOSA, A MUNICIPAL | ] |
| CORPORATION, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendant City of Tuscaloosa's (hereinafter referred to as "Tuscaloosa") motion for summary judgment, which was filed on September 7, 2005.  (Doc. 17.)  Plaintiff Dennis Taylor filed suit against Tuscaloosa alleging violations of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1983 ("§ 1983").  (Docs. 1 & 12.)  In the original Complaint, Plaintiff alleged racial discrimination for failure to promote.  (Doc. 1.)  Mr. Taylor amended his Complaint to add a new cause of action under § 1983 for failure to

promote and hostile work environment.  (Doc. 12.)  Subsequently, Plaintiff has declared that he no longer intends to pursue the hostile work environment cause of action.[1]  The issues raised in Defendant's motion for summary judgment have been fully briefed by both parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Defendant's motion is due to be granted in all respects.

II.    Facts.[2]

Mr. Taylor, an African-American male, was hired by Tuscaloosa as a laborer in its Public Works Department on May 4, 1987.  (Doc. 17, p. 3.)  He was reclassified several times as follows: to cart repairman II as a successful job bidder on May 23, 1989; to alternate truck driver as a successful job bidder on May 19, 1990; he returned to the laborer classification on August 7, 1990; he was then reclassified to the Wastewater Department as a plant

---

[1]In the Joint Status Report, Mr. Taylor states that he "is no longer pursuing claims for hostile work environment and these claims are due to be dismissed."  (Doc. 16.)  Therefore, these claims are hereby dismissed.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

operator helper, a lateral transfer within the laborer classification on July 12, 1991; and finally, he was reclassified as an equipment operator on a job bid with the Tuscaloosa Department of Transportation ("TDOT") right-of-way crew assigned to operate a slope-mower. *Id.* at 3-4. During the course of his employment, Mr. Taylor has received several written and oral reprimands. *Id.* at 4-5.

On August 5, 2003, Tuscaloosa posted a job bid for an equipment operator senior position to operate a flail mower in the right-of-way crew, and Charles Ballard was awarded the job on December 5, 2003. *Id.* at 5. On October 22, 2003, Tuscaloosa posted a job opening for an equipment operator senior position to operate a dump truck in the heavy equipment crew. *Id.* The minimum qualifications for the position included "having a high school diploma or GED; one year of experience in medium to heavy equipment operation and maintenance or a related field. Must possess an Alabama Commercial Driver's License, Class A or Class B depending on position." (Doc. 17, Exhibit 7.) Mr. Taylor, Mr. Ballard, and other applicants bid on the job. *Id.* at 5. Interviews were scheduled on January 20, 2004, and they were conducted by Sedell Bullard of the Human

Resources Department, Tuscaloosa Division Supervisor Rex Buck, and Dennis Harbin from TDOT.  *Id*. at 6.  Plaintiff believes that the interviews were delayed to allow Mr. Ballard time to conform to a City policy that states that an employee cannot be promoted unless he or she has held a position for at least six months.  (Doc. 19, p. 10.)  Tuscaloosa denies Plaintiff's account and avers that the delay was to accommodate Sedell Bullard's schedule.  (Doc. 17, p. 6.)

On January 29, 2004, Rex Buck recommended the lateral transfer of Mr. Ballard to fill the equipment operator senior position.  *Id*. at 7.  On March 4, 2004, Mr. Ballard was officially selected for the job, and he was assigned to drive a tandem axle dump truck.  *Id*.

On March 17, 2004, in compliance with Defendant's procedures, Mr. Taylor filed a grievance based on Tuscaloosa's failure to promote him to the equipment operator senior position.  *Id*.  Plaintiff alleged only that he had more seniority than Mr. Ballard; he did not allege racial discrimination in his grievance.  *Id*.  On the same day, Rex Buck responded to the grievance and explained that the most qualified person was chosen to fill the position and that the decision was made based upon the totality of the circumstances.

*Id.* at 7-8.  Furthermore, he explained that seniority is an integral factor only when applicants are of equal qualifications.  *Id.*  On March 6, 2004, TDOT Director Joe Robinson responded to Mr. Taylor's grievance and concurred with Rex Buck.  *Id.* at 8.  Plaintiff then filed an appeal, and on April 21, 2004, Alvin P. DuPont, Mayor of Tuscaloosa, denied the appeal.  *Id.*

On May 2, 2004, Plaintiff filed a complaint with the EEOC alleging racial discrimination pursuant to Title VII.  *Id.* at 2.  He alleged that Defendant's failure to promote him was based upon racial animus.  On September 18, 2004, the EEOC issued a right to sue letter and did not make a determination of discrimination.  *Id.*

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion.

Plaintiff's only remaining claim is that in violation of Title VII and §
1983, he was not promoted to the position of equipment operator senior to
operate a dump truck.  Defendant contends that Mr. Taylor has failed to
establish a *prima facie* case of discrimination because he is unable to show
that he is otherwise qualified for the position in question.  (Doc. 17, p. 3.)
Furthermore, Defendant avers that it has offered legitimate,
nondiscriminatory reasons why the comparator was hired instead of Plaintiff.
*Id*.  Defendant argues that Plaintiff has not met its burden to rebut these
legitimate non-discriminatory reasons and has also failed to produce
substantial evidence that the decision-maker was motivated by
discriminatory animus.  *Id*.  Moreover, Defendant contends that Plaintiff has
failed to establish either that he is similarly situated with the comparator
employee or that the decision-maker actually knew that they were similarly
situated.  *Id*.  Finally, Tuscaloosa argues that the alleged violation was not
committed pursuant to a policy, custom, or practice adopted by anyone with
final decision-making authority.  *Id*.

A.    Title VII Claim.

A plaintiff may employ direct, circumstantial, or statistical evidence to prove intentional discrimination.  *Standard v. ABEL Serv., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998).  Because Mr. Taylor has offered no direct or statistical evidence, he must rely upon circumstantial evidence in his effort to prove his case.  Title VII claims based upon circumstantial evidence are reviewed by applying the three-step burden shifting analysis set out in the United States Supreme Court cases of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  The analysis for discrimination claims arising under § 1983 mirrors the analysis for Title VII.   *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n. 11 (11th Cir. 2000).  Under this test, the initial burden lies with the plaintiff to establish "a *prima facie* case of racial discrimination."  *McDonnell Douglas,* 411 U.S. at 802.  Once the plaintiff has met the *prima facie* case requirement, the defendant must "articulate some legitimate, non-discriminatory reason for the [adverse employment action]."  *Id*.  This burden is "exceedingly light . . . .  At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are

legitimate; the defendant's burden is merely one of production, not proof."
*Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (quoting
*Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)
(citation and internal quotation marks omitted)).  If the defendant succeeds
in its burden of production then the burden returns to the plaintiff to prove
by a preponderance of the evidence that the defendant's reasons were
simply pretext for discrimination.  *Burdine*, 450 U.S. at 253 ("The ultimate
burden of persuading the trier of fact that the defendant intentionally
discriminated against the plaintiff remains at all times with the plaintiff.").

      1.    *Prima Facie* Case.

The initial burden of establishing a *prima facie* case for Plaintiff's
claims of race-based discrimination requires him to show: (1) that he is a
member of a racial minority; (2) that he was qualified to perform the
position he sought; (3) that he was rejected for that position; and (4) the
employer either filled the position with a person outside of the same
protected class or left the position open.  *See Sledge v. Goodyear Dunlop
Tires North America, Ltd.,* 275 F.3d 1014, 1015 n. 1 (11th Cir. 2001) (citing
*McDonnell Douglas*, 411 U.S. at 802).

No one challenges the fact that Mr. Taylor is a member of a racial minority.  However, Defendant contends that it is "questionable" that Mr. Taylor meets the minimum qualifications for the equipment operator senior position since he could not operate a manual transmission and had only a Class B commercial driver's license at the time he bid on the job.  (Doc. 17, p. 9.)  The job posting listed the minimum qualifications for the position as requiring a Class A or Class B license.  (Doc. 17, Exhibit 7, p. 2.)  Mr. Taylor possessed a Class B license and had at least one year of experience driving dump trucks.

Tuscaloosa argues that "[i]t was considered important that the successful applicant be able to fill in on the low-boy truck which requires a Class A commercial drivers [sic] license and the ability to drive a manual transmission."  (Doc. 17, p. 9.)  Mr. Taylor could not meet either of these additional requirements.  Even though Plaintiff did not possess these additional qualifications, it remains undisputed that he met the "minimum qualifications" listed in the job posting.  (*See* Doc. 17 , Exhibit 7, p. 2.)  The

posting did not state that the successful applicant must be able to operate a manual transmission and possess a Class A license.[3]

It is undisputed that Mr. Taylor was rejected for the position and that the successful applicant, Mr. Ballard, was not African-American.  Therefore, Plaintiff has met the *prima facie* case requirement under the *McDonnell Douglas* framework.

> 2.    Legitimate Non-Discriminatory Reasons.

Once the Court finds that a Plaintiff has established his or her *prima facie* case, the burden shifts to the defendant to provide legitimate, non-discriminatory reasons for making the employment decision.  *McDonnell Douglas,* 411 U.S. at 802.  Tuscaloosa argues that the comparator, Charles Ballard, was selected for the position as a lateral transfer without any increase in pay or benefits and was "clearly more qualified than Plaintiff."  (Doc. 17, p. 9.)  Defendant refers to four of its supervisor's affidavits in support of the proposition that race was not a factor in the selection of Mr.

---

[3]In fact, Tuscaloosa does not definitively state that Mr. Taylor has not met the minimum qualifications for the job.  It merely notes that it is "questionable," leading the Court to believe that Defendant itself believes that there is a genuine issue of fact as to Plaintiff's qualifications.

Ballard for the equipment operator senior position.  *Id.*  It refers the Court to the Eleventh Circuit decision in *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000), for the proposition that "selecting the most qualified applicant is obviously a legitimate non-discriminatory reason."  (Doc. 17, p. 10.)  "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997), *cert. denied, sub nom.*, 522 U.S. 1045 (1998).

Defendants support their contention that Mr. Ballard was more qualified to operate a dump truck by pointing out that he already had a Class A commercial driver's license, which would allow him to fill in as a heavy equipment operator during temporary vacancies.  Mr. Ballard also had the ability to drive eight or thirteen speed manual transmissions, as well as over twenty years of experience driving dump trucks and other heavy equipment.  (Doc. 17, pp. 6-7.)  Even Mr. Taylor admitted in his deposition that Mr. Ballard is more qualified "on paper" when it comes to his ability to

operate manual transmissions and his extensive prior experience.  (Doc. 17, Pl.'s Depo., pp. 57-58.)

Plaintiff responds by arguing that "[t]he ability to drive a manual transmission, the ability to drive a lowboy truck, and filling in as a Heavy Equipment Operator are not mentioned at all, let alone as qualifications, in the job announcement for the position."  (Doc. 19, p. 15.)  Plaintiff cites to *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 643 (11th Cir. 1998) to support his argument that the drafters of the job posting cannot redefine the requirements in a effort to win summary judgment.  *Id*. However, the Court in *Carter* was discussing job requirements in the context of establishing a *prima facie* case and not in the context of determining whether the employer had other, non-discriminatory reasons for not choosing the plaintiff for the position.  *Id*.  Plaintiff has misunderstood the burden-shifting process.  Tuscaloosa does not have to rely solely on the job description when it proffers legitimate, non-discriminatory reasons for its decision, and the Court does not understand Tuscaloosa to be arguing that the job requires the ability to operate a manual transmission and fill in on the lowboy truck as Plaintiff contends.  (Doc. 19, p. 15.)  Therefore, the

Court finds that Mr. Ballard's higher qualifications constitute a legitimate, non-discriminatory reason for choosing to hire him over Mr. Taylor.

Plaintiff also takes issue with Tuscaloosa's assertion that Mr. Ballard made a lateral transfer to another equipment operator position. *Id*. He claims that Defendant violated its own policy when it promoted Mr. Ballard to his first equipment operator senior position, operating a flail mower. *Id*. at 15-16. The policy to which Plaintiff refers states "Promotions to a higher step within a classification or to a different classification must be at least six (6) months apart unless otherwise stated." (Doc. 17, Exhibit 16.) Mr. Ballard was hired by Tuscaloosa on June 30, 2003, and on December 13, 2003, Plaintiff contends that he was promoted to equipment operator senior in violation of this policy. At the time that he applied for the dump truck position, in October 2003, Plaintiff argues that Mr. Ballard was not qualified under the City's policy.

Tuscaloosa responds to Plaintiff's argument by pointing out that the policy mandates that "promotions" must be at least six months apart. (Doc. 20, p. 2.) It does not require that an application be rejected if an applicant has received a promotion during the previous six months. Furthermore,

Defendant states that Mr. Ballard was already an equipment operator senior and was neither being promoted to a higher step within that classification nor to a different classification altogether.  *Id.* at 2-3.  Tuscaloosa also claims that the policy was not widely followed, and it cites to the case of *Mitchell v. USBI Co.,* 186 F.3d 1352, 1355-56 (11th Cir. 1999), for the assertion that "[s]tanding alone, deviation from a company policy does not demonstrate discriminatory animus." *Id.* (citing *EEOC v. Texas Instruments, Inc.,* 100 F.3d 1173, 1182 (5th Cir. 1996); *Friedel v. City of Madison*, 832 F.2d 965, 973 (7th Cir. 1987)).  (Doc. 20, p. 3.)  Additionally, Mr. Sedell Bullard testified that the policy was out of date and no longer followed by the City.  (Doc. 17, p. 12.)[4]

Defendants also contest Plaintiff's assertion that the lengthy delay between the job posting and the interviews was so that Mr. Ballard would become eligible for the position.  Sedell Bullard explained in his affidavit that delays in the interview process were due to his personally scheduling

_____

[4]Tuscaloosa notes in its brief that on July 27, 2005, the City Council adopted new regulations which requires hourly employees to work in their job at least six months prior to bidding on a new job.  (Doc. 17, p. 13.)  Defendant admits that under this new policy, Mr. Ballard would have been prevented from bidding on either of the equipment operator senior jobs that he was awarded.  *Id.*

and conducting all interviews, and since that time, the Human Resources Department personnel have assisted in that process. *Id*. Plaintiff acknowledged in his deposition that Mr. Bullard was responsible for scheduling interviews. (Doc. 17, Plaintiff's Depo., p. 100.) Mr. Taylor has offered no evidence to support his contention that the delay was to allow Mr. Ballard time to avoid violating City hiring policies. Even though all reasonable inferences arising out of the facts should be made in favor of the nonmovant, "an inference based on speculation and conjecture is not reasonable." *Chapman v. American Cyanimid* Co., 861 F.2d 1515, 1519 (11th Cir. 1988) (quoting *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)).

Plaintiff has not been able to rebut Tuscaloosa's non-discriminatory reasons for promoting Mr. Ballard into the dump truck position. Therefore, summary judgment is due to be granted to Defendant.

B.     § 1983 Claim.

Defendant contends that Plaintiff has failed to allege that any discrimination was actually committed pursuant to a City policy, custom, or practice by anyone with final decision-making authority. (Doc. 17, pp. 13-

14.)  Tuscaloosa cites to *Monnell v. New York City Department of Social Services*, 436 U.S. 658 (1978), to support its allegation that Plaintiff's § 1983 claim should fail.  *Id.* at 14.  *Monnell* stands for the proposition that municipalities and employees or agents working on behalf of a municipality acting in their official capacities may be sued under § 1983 for damages or injunctive relief.  *Monnell*, 436 U.S. 658.  It is important to remember that § 1983 does not create federal rights; it simply provides a mechanism to enforce rights established by other sources of federal law.  In fact, Plaintiff testified at his deposition that he knew of no policy that allegedly caused the discrimination against him.  (Doc. 17, Pl.'s Depo., p. 93.)  Because Plaintiff is unable to establish his claim for discrimination and failure to promote under Title VII, his § 1983 claim must fail as well.

V.     Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be granted in all respects.  A separate order in conformity with this opinion will be entered.

Done this <u>9th</u> day of <u>January 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153